**Not for Publication**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>            *Plaintiff*,<br><br>     v.<br><br>FABIO PAZ,<br><br>            *Defendant*. | Crim. No. 92-172<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

This matter comes before the Court by way of Defendant Fabio Paz's amended motion to modify his sentence and for immediate compassionate release. D.E. 28. The Government filed opposition, D.E. 32, to which Defendant replied, D.E. 33. The Court reviewed the parties' submissions[1] and considered the motions without oral argument pursuant to Local Criminal Rule 1.1 and Local Civil Rule 78.1(b). For the following reasons, Defendant's motion is granted.

**I.     BACKGROUND**

Defendant Fabio Paz was involved in a nationwide transportation network that distributed at least 2,500 kilograms of cocaine in the United States from approximately July 1990 to May 1992. Defendant worked with Colombian drug cartels. Law enforcement were able to intercept three cocaine shipments, totaling over 2,500 kilograms; during Defendant's later trial, testimony indicated that he was actually involved in over 7,700 kilograms during the same period.

---

[1] Defendant's brief in support of his amended motion is referred to as "Br." (D.E. 28); the Government's opposition brief is referred to as "Opp." (D.E. 32); and Defendant's reply brief is referred to as "Reply" (D.E. 33).

A jury convicted Paz on October 13, 1993 of one count of conspiracy to distribute more than 1,500 kilograms of cocaine along with two counts of possession with intent to distribute. On May 23, 1994, the Honorable William G. Bassler, U.S.D.J., sentenced Defendant to life. Following a November 1995 amendment to the United States Sentencing Guidelines, Judge Bassler resentenced Defendant to 419 months, which was within the Guidelines range of 360 months to life. According to the Government, Defendant's projected release date is February 14, 2022.

In a letter dated July 19, 2015, Judge Bassler wrote to the "Office of the Pardon Attorney, United States Department of Justice," recommending that Defendant's sentence be commuted to time served. D.E. 33-1 at 1. Judge Bassler indicated that the evidence at Defendant's trial demonstrated that he had been a "middleman between drug suppliers in Colombia and a distribution network" in the United States. *Id.* Judge Bassler added that there was no evidence that Defendant had accumulated any substantial wealth or achieved any significant standing in the drug organization. *Id.* at 3. At the time of Judge Bassler's letter, Defendant was 63 years old and had served more than 23 years of his sentence. *Id.* at 2. Judge Bassler explained the reason for his recommendation:

> During his long term of incarceration, Mr. Paz has had no disciplinary charges of any kind. He earned a high school diploma and has completed courses in English as a second language, electrical work, and commercial driving. He has more than 70 certificates for completion of courses in Bible study and other religious lessons and observances. In addition to these significant accomplishments, Mr. Paz has demonstrated a strong work ethic in prison, having been employed full-time for 17 of his 23 years despite long periods of poor health resulting from prostate cancer (now in remission) and diabetes mellitus type II. The extraordinary evidence of rehabilitation after I originally sentenced him is, as the Supreme Court noted, highly relevant now in reconsideration of his sentence.

*Id.*

Judge Bassler further noted that Defendant did not have a prior criminal history nor was there any evidence that Defendant had engaged in violence. *Id.* at 3. Judge Bassler observed that following his criminal sentence, Defendant would serve time in immigration detention before being removed to Colombia. *Id.* at 2-3. Finally, Judge Bassler noted that in Defendant's most recent progress report (January 14, 2015) from the United States Bureau of Prisons ("BOP"), the BOP found that Defendant had demonstrated a sense of accountability to himself and others. *Id.*

Defendant is now 68 years old. As noted by Judge Bassler, Defendant suffers from Type 2 diabetes. He is currently housed at the CI Rivers in Winton, North Carolina. Defendant petitioned BOP for compassionate release in April 2020 in light of the ongoing COVID-19 pandemic. The BOP denied his petition in May 2020. Paz now seeks relief pursuant to 18 U.S.C. § 3582(c)(1)(A).

## II.  LEGAL STANDARD

Following the passage of the First Step Act, Section 3582(c)(1)(A) now reads as follows:

> (c) Modification of an imposed term of imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) *extraordinary and compelling reasons warrant such a reduction*; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the

3

> offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> *and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission*; and
>
> (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; and
>
> (2) in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A) (emphases added). The parties agree that Defendant has satisfied the statutory exhaustion requirement. Opp. at 4.

The applicable policy statement of the United States Sentencing Commission is found in Section 1B1.13. U.S.S.G. § 1B1.13. The application notes to the section provide four circumstances that can be considered extraordinary and compelling: (1) the medical condition of the defendant, (2) the age of the defendant, (3) family circumstances, and (4) other circumstances constituting an extraordinary or compelling reason, either considered alone or in combination with any of the other three stated reasons. *Id.* cmt. n. 1(A)-(D).

In the application note, the fourth consideration requires a determination of the Director of the BOP. *Id.* cmt. n. 1(D). Here, the Government acknowledges that the policy statement should also apply when the motion is filed by a defendant in addition to the BOP Director. Opp. at 5 n.3. The Court agrees, although this has been a point of contention in similar cases. In *United States v. Rodriguez*, Crim. No. 03-271, – F. Supp. 3d –, 2020 WL 1627331 (E.D. Pa. April 1, 2020),

4

United States District Judge Anita Brody confronted the same issue. Ultimately, Judge Brody held that the fourth provision also applies when the motion is made by a defendant. *Id.* at *6. Judge Brody noted that her determination was in accord with the majority view. *Id.* at *4 (collecting cases). Judge Brody also persuasively explained her decision as follows:

> Under the First Step Act, however, it is possible for inmates to file compassionate-release motions—under the 30-day lapse provision—when their warden *never* responds to their request for relief. Thus, Congress specifically envisioned situations where inmates could file direct motions in cases where nobody in the BOP *ever* decided whether the motion qualified for relief under the catchall provision that the Commission originally sought to apply to *all* motions.
>
> It would be a strange remedy indeed if Congress provided that prisoners whose wardens failed to respond in such a situation could only take advantage of the thirty-day lapse provision by accepting a pared-down standard of review that omitted the flexible catchall standard. . . . This would have the perverse effect of *penalizing* prisoners who take advantage of the First Step Act's fast-track procedures and rewarding prisoners who endure the BOP-related delay that the Act sought to alleviate.
>
> That would be antithetical to the First Step Act. The First Step Act—and the critical 30-day lapse route it provided—directly responded to a compassionate-release system so plagued by delay that prisoners sometimes died while waiting for the BOP to make a decision. *Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice); *see also* 164 Cong. Rec. S7314-02, 2018 WL 6350790 (Dec. 5, 2018) (statement of Senator Cardin, co-sponsor of First Step Act) ("[T]he bill expands compassionate release . . . and expedites compassionate release applications."). . . . Congress sought to help, not hinder, these sorts of prisoners . . . . Nothing in the text of the old policy statement calls for it, since that statement expressly limits itself to motions filed by the BOP and was written before this situation was even possible to envision.
>
> Adopting the minority view, then, would undermine the purpose of the First Step Act and create an inconsistent and shifting definition of the term "extraordinary and compelling." Because the Sentencing Commission has not issued a policy statement

5

>addressing post-First Step Act procedures, it certainly has not mandated that courts take such an approach. Accordingly, as a result of the First Step Act, there is simply a procedural gap that the Sentencing Commission—currently lacking a quorum and unable to act—has not yet had the chance to fill. Nothing in § 3852(c)(1)(A)(i) requires courts to sit on their hands in situations like these. Rather, the statute's text directly instructs *courts* to "find that" extraordinary circumstances exist.

*Id.* at *5-6 (emphases in original).

Pursuant to Section 3582(c)(1)(A), the Court must also consider the factors listed in 18 U.S.C. § 3553(a). They include the nature and circumstances of Defendant's offense, the history and characteristics of Defendant, the need for the sentence to provide just punishment, and the need to protect the public from future offenses of Defendant. *Id.*

### III.    ANALYSIS

The Court finds that Defendant has demonstrated extraordinary and compelling reasons under Section 3582(c)(1)(A). Defendant suffers from an underlying health condition (and possibly conditions) that make him particularly vulnerable should he contract COVID-19. In addition, he has served the vast majority of his sentence – over 28 years – and he has shown admirable rehabilitation while incarcerated. The Court also credits the views of Judge Bassler, the judge who not only sentenced Defendant but who also presided over Defendant's trial and was well acquainted with the evidence.

The COVID-19 pandemic has had a devastating impact on the United States. District Judge John E. Jones III described the situation as follows:

>In a matter of weeks, the novel coronavirus COVID-19 has rampaged across the globe, altering the landscape of everyday American life in ways previously unimaginable. Large portions of our economy have come to a standstill. Children have been forced to attend school remotely. Workers deemed 'non-essential' to our national infrastructure have been told to stay home. Indeed, we now live our lives by terms we had never heard of a month ago—we are

6

> "social distancing" and "flattening the curve" to combat a global pandemic that has, as of the date of this writing, infected 719,700 people worldwide and killed more than 33,673. Each day these statistics move exponentially higher.

*Thakker v. Doll*, No. 20-480, – F. Supp. 3d –, 2020 WL 1671563, *2 (M.D. Pa. Mar. 31, 2020) (footnotes omitted). On the date of Judge Jones' opinion, the United States had 186,101 COVID-19 cases. https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/previouscases.html (last visited July 7, 2020). As of July 10, 2020 – a little over three months later – the United States had 3,047,671 cases and 132,056 deaths. https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last visited July 10, 2020). North Carolina, where Defendant is housed, currently has 81,331 confirmed cases and 1,479 deaths. https://covid19.ncdhhs.gov/dashboard (last visited July 10, 2020).

Moreover, "[p]risons are ill-equipped to prevent the spread of COVID-19." *Rodriguez*, 2020 WL 1627331, at *8. This fact seems to be recognized at the highest levels of government. The coronavirus relief bill enacted on March 27, 2020 allows the Attorney General to increase the BOP's capacity to move prisoners to home confinement. *See* Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. No. 116-136, § 12003(b)(2) (2020). This congressional action came after Attorney General William Barr sent a memorandum to the Director of the BOP recognizing that "there are some at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities." Memo. from Attorney Gen. William Barr to Director of BOP, *Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic* (Mar. 26, 2020).

And to its credit, as the Government points out, the BOP has taken affirmative steps to combat the pandemic. The BOP developed a "COVID-19 Action Plan." https://www.bop.gov/resources/news/20200313_covid-19.jsp (last visited July 7, 2020). On May

18, 2020, the BOP moved to phase seven of the plan. https://www.bop.gov/resources/news/20200520_covid-19_phase_seven.jsp (last visited July 7, 2020). The BOP has limited group gatherings in certain areas, limited the movements of inmates within facilities (with the exception of medical treatment or similar exigencies), and issued face masks to all staff and inmates. https://www.bop.gov/coronavirus/covid19_status.jsp (last visited July 7, 2020). Despite its efforts, the BOP has not escaped the impact of the coronavirus. 1,992 inmates and 160 staff have tested positive. https://www.bop.gov/coronavirus/ (last visited July 7, 2020). 94 inmates, and 1 staff member, have died. *Id.*

Currently, there is no cure for COVID-19, and all persons are at risk. However, according to the Centers for Disease Control and Prevention, certain individuals are at higher risk. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased risk.html (last visited July 7, 2020). Higher risk individuals include those with Type 2 diabetes mellitus. *Id.* Moreover, persons with hypertension "might be at an increased risk[.]" Here, Defendant suffers from both Type 2 diabetes and hypertension.[2] Clearly, Defendant is in a more vulnerable category due to his medical conditions.

In addition, like the defendant in *Rodriguez*, Defendant has served the vast majority of his sentence and also demonstrated rehabilitation. *Rodriguez*, 2020 WL 1627331, at *10. Defendant is now 68 years old and has spent the last 28 years in prison. His projected release date is less than two years – about 20 months – away. While keeping Defendant incarcerated will only make a

---

[2] The Government notes that when Defendant was at his current facility on May 5, 2018, his medical records reflected that he suffered from diabetes, hypertension, gastroesophageal reflux disease, glaucoma, high cholesterol, and a history of prostate cancer. Opp. at 4. The presence of at least certain comorbidities – the simultaneous presence of two chronic diseases or conditions in a person – can also lead to increased risk of serious adverse results, including death, from COVID-19. https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-guidance-management-patients.html (last visited July 8, 2020).

marginal difference to his punishment, the additional time could have a detrimental (and potentially deadly) impact on his health. Moreover, he faces detention and removal from the immigration authorities.

Turning to Defendant's personal history and characteristics under Section 3553(a), and as Judge Bassler indicated, Defendant has shown considerable rehabilitation while in prison. He has not be a disciplinary problem. Instead, he has earned a high school diploma and has completed courses in electrical work, commercial driving, and English as a second language. He has more than 70 certificates for completing courses on religious lessons and observances. And, as of 2015, he had been employed full-time for 17 of his 23 years despite suffering from cancer and diabetes. The Court does not find Defendant's rehabilitation alone to support his motion; instead, the Court considers Defendant's rehabilitation along with the other reasons set forth in this Opinion. *See Rodriguez*, 2020 WL 1627331, at *10; *see also* U.S.S.G. § 1B1.13 cmt. n. 3 ("Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant *is not, by itself,* an extraordinary and compelling reason for purposes of this policy statement." (emphasis added)).

As to the remaining factors, Defendant certainly committed a serious offense. At the same time, as noted by Judge Bassler, Defendant's role was that of middleman. Defendant had not accumulated significant wealth as a result of his criminal activities nor did he achieve a substantial role within the drug trafficking organization. And Defendant did not have a prior history nor was there any evidence that he used violence in committing his offenses. Defendant has served 28 years, which is sufficiently long to provide just punishment, to provide general and specific deterrence, and to protect the public from any future offenses of Defendant.

Finally, the Court respects and considers Judge Bassler's view. Judge Bassler presided over Defendant's case and was intimately familiar with the evidence. In Judge Bassler's opinion,

9

Defendant should have been released five years ago. The passage of time only lends greater credence to Judge Bassler's recommendation.

## IV. CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion. The Court sentences Defendant to time served and five years of supervised release. If Defendant is not taken immediately into immigration custody, then he must also remain in quarantine for fourteen days upon his release. An appropriate Order accompanies this Opinion.

Date: 7/10/2020

John Michael Vazquez, U.S.D.J.